## PATTY BROWN *vs.* EUNICE BROWN.

On the trial of a writ of entry brought in the name and behalf of a ward by the guardian, the guardian's letter of appointment is admissible in evidence, although the fact of the guardianship is not disputed by the tenant, and although the letter shows that the appointment was made upon the ground that the ward was an insane person, and one of the issues is whether the ward had sufficient mental capacity to execute a deed between twelve and thirteen months before.

On the trial of a writ of entry, in which the tenant puts in evidence an office copy of a deed of the premises from the demandant to a third person, and afterwards, upon the issue of the demandant's mental capacity at that time, calls the subscribing witnesses to testify to the circumstances of its execution, it is discretionary with the court to prohibit the tenant to introduce the original deed in connection with their testimony.

On the trial of an issue in a writ of entry, whether the demandant had sufficient mental capacity at the time of her execution of a deed of the premises to a third person, one of the witnesses to the deed testified, for the tenant, that it was carefully read to the demandant before she signed it, and that she assented to it and acknowledged it as her free act before himself as a magistrate; and on his cross-examination denied ever having said that she was *non compos mentis* at that time. *Held,* that it was competent for the demandant to prove that the witness had said so.

Upon the question whether a woman was induced by improper influence to change her abode from one family to another, evidence is competent of discomforts which she avoided, and comforts which she gained, by the change.

On the trial of an issue in a writ of entry, whether the demandant in capable and disposing mind elected to accept a provision in a will for her support, and thereby renounce her title in the demanded premises, the tenant requested an instruction to the jury (without the qualifying words in brackets) that if the demandant intelligently accepted the provision in the will, and received support in accordance with [and in view of] it, she elected to renounce her title, and it was not necessary that there should have been [an actual, or an intelligent, or an accurate] balancing of advantages, or of the comparative value of her title and of the provision in the will, but only an actual [intelligent] acceptance of the provision. The judge gave the instruction, but qualified it with those words, and added to it that there would be no intelligent acceptance of the provision, if the demandant had not mental capacity to understand what her title was or what the provision was, and to consider or balance them to some extent, or to compare to some extent the value of the one and the other. *Held,* that the tenant had no ground of exception.

WRIT OF ENTRY, dated April 29, 1870, in which the demandant, a singlewoman, by her guardian, Jonathan Brown 3d, sought to recover a messuage in Gloucester, claiming therein an estate for her life. Plea, *nul disseisin.* Trial in the superior court, before *Brigham,* C. J., who allowed the following bill of exceptions:

"It was admitted that Jonathan Brown, the demandant's father, died in 1809, seised of the demanded premises, upon which .

he had lived, and his will devised them to his widow for life, with
remainder to the demandant for her life, and remainder to his son
Jonathan Brown 2d. The demandant put in a copy of the will,"
which appointed Jonathan Brown 2d executor, and contained thin
clause: "I give and bequeath to my daughter, Patty Brown, my
dwelling-house which I now occupy, together with the barn ana
appurtenances thereto belonging," (the same being the demande*
premises,) "after my wife's decease, to have and to hold the
same during her life, save that she does not at any time dispos*
of the improvement thereof without the special advice and con-
sent of the executor."

"The demandant also offered in evidence a certified copy oi
the decree of the probate court made on July 6, 1869, appointing
Jonathan Brown 3d to be her guardian on the ground that she
was an insane person. The tenant objected to this, but the judge
ruled that it was competent evidence, and allowed it to be read
to the jury. The demandant then rested.

"The tenant put in the will of Jonathan Brown 2d, dated Oc-
tober 9, 1846, by which the demanded premises were devised to
his son John Brown. Said Jonathan died February 1, 1847."
This will, after provisions for the benefit of the testator's sons
George, John and Jonathan 3d, and of his grandsons George and
Eben, appointed his said three sons executors, and contained this
clause: "I do hereby make my whole estate, exclusive of what I
have devised to my grandsons George and Eben, liable to the sup-
port of my sister Patty Brown, with food, raiment and every-
thing necessary for her comfort. It is my wish that she may be
indulged in living and boarding with any one of my executors,
and in changing at her option, the others to pay what is reason-
able for her support; but all this provision for her support is to
be void, so as to give her no claim on my executors as such, in
case she should lay any claim to my father's estate."

"The tenant contended, and offered evidence tending to show,
that the demandant, from the time of her brother's death in 1847,
until the death of his son John Brown, which occurred in 1868,
lived in the family of said Jonathan, and was supported by him.
She also offered evidence tending to show that in the spring of

1847 the will of said Jonathan was read to the demandant, and when the clause by which the demanded premises were devised to John was reached the demandant exclaimed, ' Why, that is mine,' or words to that effect ; that John replied ' Wait till you hear the whole ; ' and that afterwards, after hearing the whole will, she replied, ' Well, I want to live with John, I shall stick to John, I shall stand by the will,' or words to that effect. The tenant, upon this evidence, contended that the demandant, by accepting the provision made for her by the will, had elected to relinquish her claim to the demanded premises, and was now estopped from setting up any claim by which the full operation of said will, including the devise to John, would be prevented. The tenant was the wife of John Brown, and claimed to be tenant for life of the demanded premises under his will, which was put into the case. The demandant is eighty-six, and the tenant eighty-five, years of age.

" The tenant also put into the case an office copy of an indenture between the demandant and Abby K. Williams, a daughter of the tenant," dated June 18, 1868, executed and delivered in the presence of two subscribing witnesses, acknowledged as her free act and deed by the demandant on that day, before John S. Webber as a justice of the peace, and recorded June 22, 1868, in the Essex registry of deeds ; wherein the demandant, in consideration of the said Abby's promise to provide a comfortable support for her during the rest of her life, conveyed to the said Abby all her right and title in and to the demanded premises.

" When this paper was offered, the demandant objected that a copy was not admissible under the circumstances ; but the judge admitted it. At a subsequent stage of the trial, the tenant called both the subscribing witnesses to said indenture, to testify to the circumstances under which it was executed ; and offered to show to them, and to put into the case, the original instrument. The demandant objected ; and the judge ruled that the tenant, having elected to put in a copy, could not subsequently put the orig inal into the case.

" The demandant denied she ever accepted the provision made for her by her brother's will ; contended that she always worked

for her living in his family ; and also contended that she was a person of feeble intellect, without sufficient capacity to make an election by which she would be bound, or to have made a valid conveyance, as alleged, in 1868 ; and there was much evidence on this subject on both sides.

" John S. Webber, who was one of the subscribing witnesses to the indenture with Abby K. Williams, testified that the instrument was carefully read to the demandant before it was signed, and that she assented to its terms, and acknowledged it as her free act, before him as a magistrate. On cross-examination, he was asked if he had ever said that at that time she was *non compos* and did not know anything more than a log of wood ; and he denied that he had ever said so. The demandant called George Brown, her nephew, and he was allowed to testify, under objection, that he had a conversation with Webber in February 1871, in which Webber said that he had something to do with a paper signed by the demandant, and the witness replied that no conveyance would be good for anything, and Webber replied that she was *non compos* and ' don't know any more than that log of wood,' pointing to a large roller.

" It appeared in evidence that the demandant was living with John Brown at the time of his death, and continued to live with the tenant, or her daughter Abby K. Williams, on the demanded premises, until the spring of 1869, when she left them and went to reside with her nephew Jonathan Brown 3d, who is her present guardian. The tenant contended that she was induced to take this course by improper influence ; and that the guardian, who was one of the devisees under, and executors of the will of his father, Jonathan Brown 2d, was influenced by a desire to obtain a benefit for himself, and to free himself from the obligation to maintain the demandant, imposed by that will, and had brought this suit for that purpose. The demandant was allowed, under the objection of the tenant, to offer evidence tending to show that, at the time of her removal in 1869, she was insufficiently provided with clothing and comfortable bedding ; and was also allowed to prove that, since her residence in her guardian's family, she had never been required to do any work, and had never done any.

" The tenant requested the court to instruct the jury as follows without the words in brackets:

" 1. If the jury are satisfied, upon a fair preponderance of the testimony, that the demandant, after the death of her brother Jonathan in 1847, knowing that he had devised the demanded premises to his son John, and that by the same will he had made a provision for her, intelligently accepted the provision made for her by the will, and received support in accordance with [and in view of] such provision for twenty years, such acceptance was of itself an election which estops her from setting up any title adverse to that of John Brown, and from maintaining this action. And it is not necessary that there should have been [an actual, or an intelligent, or an accurate] balancing of advantages, or of the comparative value of the estate, and of the provision made, or that there should have been a knowledge that the acceptance of the one was a renouncing of the other ; but it is only necessary for the tenant to show an actual [intelligent] acceptance of the provision made by the will, and a knowledge that the demanded premises were devised to John. [But there would be no intelligent acceptance of the provision, if the person accepting had not mental capacity to understand what her life estate was, or what the provision was, and to consider or balance to some extent these advantages, or to compare, to some extent, the value of her life estate and the provision for her support.]

" 2. If the jury are satisfied that Patty Brown, after the death of her brother Jonathan, knew that he had devised the demanded premises to his son John, and, knowing this, intelligently received the benefit of the advantages of the provision made for her in the will, that of itself will estop her from setting up a title adverse to that of John, even though she had no purpose of giving up the estate, or even if she always intended to claim the estate.

" 3. There is no question of balancing of values or advantages, and it is not in the slightest degree necessary to show that she intended to give up her interest in the estate, or had any knowledge that such would be the result of accepting the provisions of the will.

" 4. If Patty Brown accepted the provision made for her in her brother's will, and intelligently received the benefits of it for twenty years, then there is an implied condition that she adopts the whole will, conforms to all its provisions, and renounces every right inconsistent with it. And this condition is implied in law, and need not be expressed, or even be known to the party; and it is not any way inconsistent with such an election that she should always intend to claim the estate, and never have any design of renouncing it.

" The judge adopted the first of these requests, with the modifications and additions shown by the words in brackets. He also adopted the second request; but refused to instruct the jury as requested in the other prayers, except so far as they were included in the instructions given.

" He further instructed the jury that the demandant, under her father's will, had shown a title and was entitled to a verdict, unless she had lost her title by subsequent action; that the tenant contended that she had deprived herself of her title in one of two ways, viz : either by election, or by the conveyance to Abby K. Williams; that the burden of proof was on the tenant to establish one or the other of these facts; and unless she should satisfy the jury of an election by the demandant, upon the principles already laid down, or that she had made a valid conveyance to Abby K. Williams, then the demandant was entitled to a verdict. The jury found for the demandant, and the tenant alleged exceptions." Copies of all the wills and other instruments referred to were annexed to the bill of exceptions.

*S. B. Ives, Jr., (J. C. Perkins* with him,) for the tenant. 1. The decree appointing a guardian for the demandant was incompetent upon any issue ; and its introduction tended to prejudice the tenant's case upon the question of the demandant's mental capacity.

2. The original indenture between the demandant and Williams was admissible under the circumstances. An office copy had been read to the jury merely for the purpose of deducing title. If the original had then been offered for the same purpose, its admissibility would have been questionable. *Scanlan* v.

*Wright,* 13 Pick. 523.    *Ward* v. *Fuller,* 15 Pick. 185.    *Samuels* v. *Borrowscale,* 104 Mass. 207.    But it was offered afterwards, *diverso intuitu.*    When the question was raised as to the fairness of that conveyance and the mental capacity of the grantor, it became important to show the circumstances of the execution of the deed.    The attesting witnesses were called without objection; and then the original deed became material, if not absolutely necessary, to refresh their minds, to identify the transaction, and as a part of the *res gestæ.*

3. The testimony to contradict Webber was improperly admitted.    The demandant was not entitled to his opinion, and the tenant could not render a statement of it competent under pretence of a contradiction.    *Hathaway* v. *Crocker,* 7 Met. 262, 265, 266.    The contradiction also applied to a later date.

4. The evidence as to the mode in which the demandant was supplied with comforts after the death of John Brown had no tendency to prove any fact material to any issue, and could only tend to prejudice; and the testimony that her guardian had allowed her to live without work since 1869 was even less competent, for no legitimate inference could be drawn from it, and yet, it being admitted after objection, the jury would naturally consider it as bearing both on the question of mental capacity and on the question whether she had previously received the support provided in her brother's will.

5. The judge should not have qualified the first of the instructions requested; and erred in refusing to give the third and fourth.    *Smith* v. *Smith,* 14 Gray, 532.    *Hyde* v. *Baldwin,* 17 Pick. 303, 308.    2 Story Eq. §§ 1075, 1077.    *Weeks* v. *Patten,* 18 Maine, 42.    *Smith* v. *Guild,* 34 Maine, 443.    *Hamblett* v. *Hamblett,* 6 N. H. 333.    *Fulton* v. *Moore,* 25 Penn. State, 468. *Thellusson* v. *Woodford,* 13 Ves. 209.    *Barrow* v. *Barrow,* 4 Kay & Johns. 409.    *Birmingham* v. *Kirwan,* 2 Sch. & Lef. 444, 449. 1 Jarman on Wills (4th Am. ed.) 383 *& seq.*    The qualification of the first instruction, in which he prescribed to the jury a test of capacity, as existing in the ability of the demandant to make a comparison and strike a balance between the life estate and the provision for her support, was erroneous.    Its effect was to erect

a standard of capacity for which there is no legal authority, and to lead the jury to suppose that such a comparison was necessary. He should have given the third instruction requested, that the principle of election raises no question of the balancing of values or advantages.

6. As to the burden of proof, so far as the demandant's election, or the validity of the indenture, depended on mental capacity, the presumption would be that she was sane, and the burden would be on her to disprove it. *Howe* v. *Howe*, 99 Mass. 88, 98.

*W. C. Endicott*, (*J. W. Perry* with him,) for the demandant.

CHAPMAN, C. J. 1. This action is brought by the demandant, by her guardian; and upon the trial the letter of guardianship was admitted in evidence, against the tenant's objection. The ground of the objection was, that, as the tenant had not denied the guardianship in her answer, there was no issue raised in the pleadings which made the letter pertinent as evidence, and the admission would prejudice the tenant. We do not perceive the force of this objection. The letter would be pertinent as part of the history of the case, to show the time when the demandant was placed under guardianship, and that its cause was insanity, and thus make this part of the case more definite. The admission of the fact by the tenant would not make the letter inadmissible, nor can we see how it could prejudice the tenant.

2. The demandant derived her title from the will of her father, who in 1809 devised it to her for life. His title was not controverted. In her defence, the tenant put in the will of her brother, Jonathan Brown 2d. The evidence tended to show that the demandant, who was Jonathan's sister, had formerly lived with him and been supported by him. His will, dated in 1846, devises his real estate to his sons and grandsons, gives several legacies, makes his three sons executors, and adds the clause which is quoted in the exceptions. The tenant claims title under the will of John Brown, and contends that the demandant's title is forfeited under that clause. She also put in an office copy of an indenture, made in 1868, between the demandant and Abby K. Williams, the tenant's daughter, by which the demandant conveyed the demanded premises to Mrs. Williams, and the latter agreed to support the

demandant. The copy was admitted, against the demandant's objection. At a subsequent stage of the case the tenant offered the original, and offered the subscribing witnesses to prove it. But it was objected to, and the court ruled that the tenant, having elected to put in a copy, could not subsequently put the original into the case. We think the court had a discretionary right, under the circumstances, to make this ruling; and that it is not subject to the tenant's exception. The tenant had no absolute right to introduce both the original and the copy.

3. John S. Webber, one of the subscribing witnesses to the indenture, testified that the paper was carefully read to the demandant before it was signed; that she assented to its terms, and acknowledged it as her free act before him as a magistrate. On cross-examination, he denied having said that she was *non compos* and did not know anything more than a log of wood. A witness was afterwards allowed to testify for the demandant, that Webber had said, in a conversation which the jury would be authorized to regard as referring to this paper, that she was *non compos* and " don't know anything more than that log of wood," pointing to a roller. This was objected to; and it is contended that it does not contradict Webber, and that, if he made the statement, it was immaterial, being the mere expression of an opinion. But his testimony as to the acknowledgment of the deed clearly implied that she acknowledged it intelligently; and the statement proved was more than an opinion. It was a statement that she had not, as a fact, acknowledged the deed intelligently. The case is more like *Hathaway* v. *Crocker*, 7 Met. 262, than like *Hubbell* v. *Bissell*, 2 Allen, 196, and *Commonwealth* v. *Fairbanks*, Ib. 511.

4. It appeared that the demandant had been living with Jonathan till his decease, and then lived with the tenant and Mrs. Williams till the spring of 1869, when she left them, and went to reside with her guardian, who is her nephew. The tenant contended that she was induced to take this course by improper influence, and that the guardian, who was a devisee under the will of Jonathan Brown 2d, and was one of the executors, desired to gain an advantage to himself by removing her, and had brought this ac-

tion for that purpose. The materiality of that matter is not very apparent, as it does not tend to disprove her title ; but it was regarded as important at the trial. The demandant was permitted to meet it by offering evidence that at the time of her removal she was insufficiently provided with clothing and comfortable bedding; and that since her residence in her guardian's family she had never been required to do any work, and had not done any. This evidence is excepted to. But it had some tendency to show that she had a reasonable motive for removing to the house of the guardian and remaining there, such as might influence any person, sane or insane. It applied to the point of improper influence, and tended to rebut the accusation.

5. We think the qualification of the first prayer for instructions, which was made by the judge, was right. The question to the jury was whether the demandant had forfeited her title to the demanded premises, by accepting the provision made for her in her brother Jonathan's will. It was admitted by the judge that she might thus forfeit it. But it was important that he should state this principle with all proper qualifications, and he rightly stated that the election must be in view of the substituted provision. He also made a correct qualification of the request for instructions as to the balancing of advantages, and as to the intelligent acceptance of the provision made by the will, and as to her mental capacity. She could not be bound by an act done while she was *non compos mentis*, or made unintelligently, and not in view of the provision which she elected to take. As to the third and fourth requests, the subject matter is covered by the first and second instructions, so far as the case required ; and the instructions to the jury were correct.

6. A question is stated on the tenant's brief as to the burden of proof ; but no such question appears to have been raised at the trial. *Exceptions overruled.*