JAMES M. WATSON & others *vs.* HORACE H. WATSON.

Plymouth. Oct. 15, 1878. — Jan. 12, 1880.  AMES, ENDICOTT & SOULE, JJ.
absent.

A person accepting and holding a beneficial interest under a will cannot, either in
equity or at law, assert an independent title in other property against the will.
But if, after having received a legacy in ignorance of this rule, he, immediately
upon being informed of the rule, and before any other person's rights have
been affected, returns the legacy to the executor, and gives him notice that he
elects not to take it, the rule does not apply.

PETITION by James M. Watson, Edward W. Watson and
Albert M. Watson, for the partition of certain lands on Clark's
Island in the harbor of Plymouth, formerly owned by the grand-
father of the petitioners, who was the great-grandfather of the
respondent, and who died intestate; and which by various con-
veyances had become the common and undivided property of
the petitioners and of an uncle of theirs, in the following propor-
tions: James, six forty-eighths; Edward, seven forty-eighths;
Albert, six forty-eighths; and the uncle, twenty-nine forty-
eighths; and so continued at the death of the uncle, who left
a will, which was duly admitted to probate on October 9, 1876,
and contained the following provisions:

" 8. I give to my nephew, Edward W. Watson, the sum of
fifty dollars, and my old easy-chair.

" 9. I give to my nephew, James M. Watson, my boat called
the Albert Mortimer, and her outfit. Also one bedstead, one
mattress, two pillows, two sheets, two blankets, one large silver
spoon, three wooden chairs, one cane-bottom roundabout, the furni-
ture which belonged to his aunt, Eliza, six hens and a cockerel,
and one cow called the Marshfield cow. I also give, devise and
bequeath to the said James M. Watson my share in the salt-
marsh lot at the Gurnet, and all my right, title and interest in
and to two acres and twenty rods of land on said Clark's Island,
lying in the cedar field, so called, and adjoining his homestead;
to have and to hold the same to him, his heirs and assigns, in
fee simple forever.

" 10. I give, devise and bequeath to my great-nephew, Horace
Herbert Watson, grandson of my brother, John Watson, ten

acres of pasture land on said Clark's Island, on the northeast side of the cedar field, and adjoining the same; the lines thereof to run parallel with said cedar field, to be fenced by him at his own expense; to have and to hold the same to the said Horace Herbert Watson, his heirs and assigns absolutely and in fee simple forever. I also give to said Horace Herbert one large silver spoon.

"11. I give to my nephew, Albert Mortimer Watson, all my farming utensils, live stock, and crockery ware, not hereinbefore disposed of, absolutely and for his own use."

"13. I give, devise and bequeath to my said nephew, Albert Mortimer Watson, the elder of that name, the use, income and improvement of all my real estate situated on said Clark's Island, saving and excepting herefrom the parcels of land herein before devised to James M. Watson and Horace Herbert Watson by articles 9 and 10 respectively; to have and to hold the same for and during the term of his natural life," with remainder to his son, Albert M. Watson, Jr., in fee.

The petitioner Albert was also appointed executor of the will, and took out letters testamentary, but has settled no account in the Probate Court.

All the petitioners received the legacies, and James entered upon the lands devised to him, under the will, except that Edward did not receive the chair bequeathed to him; and at the time of receiving the legacies, and entering upon the lands, they were aware of the provisions of the will, but were ignorant of the alleged rule of law that, if any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will; and they received the legacies, and entered upon the lands, in ignorance of the law, and without consulting counsel.

The petitioners were first informed of that rule of law, about the middle of November 1877, by their counsel, after an interview between him and the counsel for the respondent, by whom he was informed that he contended that such was the law; whereupon Edward, to whom no land was devised under said will, immediately returned the legacy received by him to the executor, with this statement in writing and signed: "I have just been informed that I cannot claim rights as a tenant in

common of the land claimed by Horace H. Watson, if I conclude to take the legacy of fifty dollars. I therefore notify you of my election not to take the legacy."

In the petition, the petitioners respectively claimed the shares belonging to them at the death of their uncle as above stated, and Albert also claimed a life estate in the share belonging to the uncle, and it was alleged that Albert's son was entitled to the remainder in this share. Notice was issued to Albert's son, and a guardian *ad litem* appointed for him; and to Horace H. Watson, who filed an answer, denying that the lands described in the petition were owned in common by the petitioners, and alleging that ten acres thereof, being those described in the tenth article of the will, were owned by him in severalty.

At February term 1878, the case was submitted by all the parties to the judgment of the Superior Court, upon the facts above stated, with this memorandum above the signature of the petitioners' attorney: "The petitioners do not hereby waive the right hereafter to elect, upon a decision of the law, if they should desire." *Allen*, J. gave judgment for the respondent Horace H. Watson as to the parcel claimed in his answer; and judgment for the petitioners for partition of the residue of the land. The petitioners appealed to this court.

*C. G. Davis*, for the petitioners.

*A. Mason*, for the respondent.

GRAY, C. J. The principle on which the respondent relies was thus stated by Chief Justice Shaw: "It is now a well settled rule in equity, that, if any person shall take any beneficial interest under a will, he shall he held thereby to confirm and ratify every other part of the will, or, in other words, a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will." *Hyde* v. *Baldwin*, 17 Pick. 303, 308.

In this Commonwealth, it has been decided, in accordance with the opinions of Lord Mansfield, Lord Loughborough and Lord Redesdale. that the rule holds good at law as well as in equity. *Smith* v. *Smith*, 14 Gray, 532. *Brown* v. *Brown*, 108 Mass. 386. *Hapgood* v. *Houghton*, 22 Pick. 480, 483. *Doe* v. *Cavendish*, 3

Doug. 48, 55; *S. C.* 4 T. R. 741, 743, note. *Wilson* v. *Townshend*, 2 Ves. Jr. 693, 696. *Birmingham* v. *Kirwan*, 2 Sch. & Lef. 444, 450. Were it not so, there were few cases in which it could have been enforced at all before the St. of 1857, *c.* 214, conferred upon this court full chancery jurisdiction.

But the doctrine, whether applied in practice on the common law or on the equity side of the court, depends not upon technical rules, but upon principles of equity and justice, and upon actual intention. An election made in ignorance of material facts is, of course, not binding, when no other person's rights have been affected thereby. So if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed. This has been settled in England by a long series of authorities, of which it is sufficient to cite a few. *Pusey* v. *Desbouvrie*, 3 P. Wms. 315. *Wake* v. *Wake*, 1 Ves. Jr. 335; *S. C.* 3 Bro. Ch. 255. *Padbury* v. *Clark*, 2 Macn. & Gord. 298; *S. C.* 2 Hall & Tw. 341. *Spread* v. *Morgan*, 11 H. L. Cas. 588, 602, 611, 615. See also *Stratford* v. *Powell*, 1 Ball & Beatty, 1; *Briscoe* v. *Briscoe*, 1 Jon. & Lat. 334; *S. C.* 7 Irish Eq. 123; *Sweetman* v. *Sweetman*, I. R. 2 Eq. 141. In *Reed* v. *Dickerman*, 12 Pick. 146, 151, and in *Delay* v. *Vinal*, 1 Met. 57, 65, the rule was so stated, and not denied, but the facts did not call for its application.

Where the law allows the probate of a will in either of two forms — in common form, *ex parte*, upon being presented by the executor; or in solemn form, upon the application of any person interested and notice to all others — a person who has received a legacy under a will proved in common form is permitted, on tendering back the amount to the executor, or bringing it into court, to contest the validity of the will, and compel it to be proved in solemn form. *Bell* v. *Armstrong*, 1 Add. Eccl. 365, 374, and cases cited. *Hamblett* v. *Hamblett*, 6 N. H. 333. *Holt* v. *Rice*, 54 N. H. 398.

In *Hyde* v. *Baldwin*, 17 Pick. 303, where the holder of land under a mortgage title disposed of it by will as if it were his absolute estate, and bequeathed his personal property to the mortgagee, the latter was not allowed to maintain a bill in equity to redeem the mortgage, because, as Chief Justice Shaw

said, " by accepting and retaining the bequest made him in the
will, he has manifested his election to hold under the will," and
therefore, by the principle of equity already stated, " would be
precluded from setting up a legal or equitable claim of his own,
.the assertion of which would defeat a provision of that will,
under which he claims and has received, and now holds and
intends to hold, a beneficial bequest."

In *Smith* v. *Smith,* 14 Gray, 532, in which a testator, who had
conveyed lands by deed to one person, devised part of the same
lands to another, and the rest thereof, with other land, to the
grantee; and it was held that the latter could not, when sued at
law by the first devisee, set up in opposition to the will a title
under the deed; it appeared by the defendant's own admissions,
and by the verdict of the jury under the instructions given them,
that he, with a full opportunity to judge and full knowledge of
the nature of the estate and its situation, had accepted and was
determined to hold all the estate devised to him by the will,
and had acted upon that purpose, so that it was established that
he had elected to take the estate devised to him; and he intended
to hold under the deed, only if the law allowed him to claim
under both.

In *Brown* v. *Brown,* 108 Mass. 386, the point adjudged was,
that in order to prove an election between a life estate previously
existing and a provision made by will, it was necessary to show
an intelligent acceptance of the latter, and that there would be
no intelligent acceptance thereof if the person accepting had
not mental capacity to understand what the life estate was, or
what the provision was, and to consider or compare to some
extent the advantages of the two; and the further ruling of
the court below, that it was not necessary that there should
have been a knowledge that the acceptance of the. one was a
renouncing of the other, does not appear to have been objected
to at the trial, and, being in favor of the party against whom
the verdict was returned, was not and could not be drawn into
judgment in this court.

In the present case, the testator and the three petitioners
being the owners as tenants in common of the land of which
partition is sought, ·the testator devised ten acres thereof by
metes and bounds to the respondent.   This devise is, of course,

ineffectual as against the cotenants, unless they have confirmed it. *Peabody* v. *Minot*, 24 Pick. 329. *Sullivan* v. *Holmes*, 8 Cush. 252.

The testator also made bequests to each of the petitioners. To the petitioner James he gave his interest in other two acres and twenty rods of the same estate, and in another lot of land, as well as certain chattels; to the petitioner Albert, an estate for life, with remainder to his son in fee, in all the testator's real estate not included in the devises to the respondent and to James, and certain chattels absolutely; and to the petitioner Edward, a legacy of fifty dollars. All the petitioners received these legacies, and James entered upon the lands devised to him, with knowledge of the provisions of the will, but in ignorance of the rule of law stated in *Hyde* v. *Baldwin.*

Upon being informed of that rule, James and Albert took no steps to restore to the executor the personal property which they had received, or otherwise to renounce their claims under the will; but, two or three months afterwards, submitted their right to maintain this petition to judgment upon these facts. So far as they are concerned, the case is not distinguishable from *Hyde* v. *Baldwin* and *Smith* v. *Smith,* and there is no error in the judgment of the Superior Court. The validity of that judgment upon the case so submitted is not affected by their having asserted that they did not waive the right hereafter to elect.

But as to Edward the case stands differently. Immediately upon being informed of the rule of law, little more than a year after the probate of the will, and before the executor had settled any account in the Probate Court, or the position of any other person had been changed, he returned his legacy to the executor, and gave him notice that he elected not to take it. He cannot therefore be held to have made such an election as should deprive him of the right under his independent title to partition of the whole estate, not excepting the parcel claimed by the respondent. *Judgment accordingly.*