# UTERMEHLE *v.* NORMENT.*

EVIDENCE; DECLARATIONS AS EVIDENCE; WILLS; ESTOPPEL; ELECTION;
FRAUD AND MISREPRESENTATION; TENDER; DIRECTION OF VERDICT
ON ISSUES; ISSUES, FRAMING OF.

1. Declarations of a testator to his grandson, made at a time when it is
conceded that he had mental capacity, that if the grandson would
not take sides in a legal proceeding then pending in which the
testator was involved, he would leave the grandson a share of his
estate equal to that which he would leave to others, are inad-
missible in a proceeding by the grandson attacking the validity
of the will, although want of testamentary capacity in the testator
is charged.

2. One who takes a benefit under a will is, in the absence of fraud or
misrepresentation, estopped to thereafter contest its validity.

3. Where a grandson, who received less of his grandfather's estate
under the latter's will than he would have received had no will
been made, consented to its probate upon the acquiescence of his
grandmother, the principal beneficiary, in the promise made in her
behalf by one of his two aunts, who were also beneficiaries, that
if he would do so the grandmother would equalize matters for
him by her will, and thereupon received and disposed of his
share of the estate, the failure of the grandmother to keep such
promise will not constitute such fraud and misrepresentation on
the part of the aunts, who thereafter become beneficiaries under
her will, as will relieve him from his estoppel to question the
validity of his grandfather's will; his remedy, if any, being against
his grandmother's estate.

4. *Quære*, whether an offer made by an heir-at-law, who had taken real
and personal estate under his grandfather's will and sold and
disposed of it, to the other heirs and beneficiaries under the will,
ten years after a settlement of the estate, to account to them

---

* *Evidence — Declarations.* — As to admissibility of declarations or
acts of others in general, see the full presentation of the authorities
contained in the following editorial notes: Dying declarations as evi-
dence, note to *Worthington* v. *State*, 56 L. R. A. 353; as to how near
the main transaction declarations must be made to constitute part of
the *res gestæ*, note to *Ohio & M. R. Co.* v. *Stein*, 19 L. R. A. 733; proof
against one person of declarations by another to show partnership, note
to *Vanderhurst, Sanborn & Co.* v. *De Witt*, 20 L. R. A. 595.

· for what he had so received, is the equivalent of a proper tender
back of what he received, to enable him to assert his election not
to take under the will.

5. Although, under some circumstances, one who has taken under a
will in misapprehension of his legal rights and in ignorance of
his obligation to make an election whether to take under it or
to assert an independent title against it, will not be estopped, if
in due time he tenders back to the executor what he has re-
ceived under the will, a person who has elected to take under a
will, by consenting to its probate, and has confirmed that election
by taking his legacy and also real estate devised to him, and has
disposed of the latter beyond the possibility of return, and has al-
lowed ten years to elapse, during which time the executor's ac-
counts have been settled and the position of every ·one interested
in the estate changed, except that some of the devisees still hold
some of the real estate devised them,— is estopped to question
the validity of the will, even though he offers to account to such
devisees for what he received thereunder.

6. The lower court, on directing a verdict against a caveator at the
close of his testimony on an issue as to whether he is estopped
to deny the validity of the will, properly directs a verdict for the
caveatees on other issues as to testamentary capacity, undue in-
fluence, fraud and duress, without receiving testimony by the
caveator in support of such other issues.

7. *Quœre,* whether the probate court should include among other issues
framed for trial upon a caveat filed in 1900, including one as to
the estoppel of the caveator to question the validity of the will
as a will of real estate, an issue as to his estoppel to dispute its
validity as a will of personalty, where the will was admitted to
probate in 1889, with the consent of the caveator, although he
claims such consent was procured by fraud, and the executor has
distributed the personalty and settled his accounts, the statute of
limitations having barred a recovery of the personalty so distrib-
uted by any administrator of the testator if the will should be
declared void, or by any one else in interest; and especially where
it appears that the caveator has received more of the personalty
of the testator than the caveatees.

No. 1254.  Submitted April 9, 1903.  Decided May 5, 1903.

HEARING on an appeal by the caveator from an order of the
Supreme Court of the District of Columbia, sitting as a pro-
bate court, confirming a previous order of the court admitting
a will to probate as a valid will of personalty, and admitting
it to probate as a valid will of real estate.      *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia, sitting as a probate court, whereby the will of one George W. Utermehle, admitted to probate in the year 1889 as a will of personalty, was now also admitted to probate, under the act of Congress of June 8, 1898, as a will of real estate.

George W. Utermehle died in the city, whereof he had long been a resident, on April 16, A. D. 1889, leaving a large estate, both real and personal, of which the realty is stated to have amounted to upward of one million of dollars in value, and the personalty to something approaching the same amount; and leaving also a will, or paper-writing, purporting to be his will, which bore date on December 7, 1887, and which appeared on its face to have been duly executed for the conveyance of real estate. In and by this will, after a bequest of $3,000 to each one of three several nieces, the testator devised to Charles H. Utermehle, the appellant here, who was a grandson and a son of a deceased son, a piece of property in this city known as the Young Law Building, of the value of about $20,000; and bequeathed to him also a promissory note for $750, with the accrued interest thereon, secured by mortgage. To his wife, the grandmother of the appellant, he bequeathed all his personal property absolutely, and he devised to her in fee simple the real estate which was their place of residence, namely, the whole of square No. 765 in this city. All the rest and residue of his real estate he devised in fee simple to his two daughters, Mamie E. Norment, then the wife of Samuel Norment, and Rosa M. Taylor, then the wife of Leroy M. Taylor, as tenants in common, with the proviso that if either daughter was not satisfied with the division thus made she should have only $5, and the whole of such real estate should go to the other daughter.

Mrs. Sarah Utermehle, the testator's wife, was made executrix of the will, with the request by the testator that, inasmuch as he had no debts and all the personal property

was to go to her, only a very moderate bond should be required of her as executrix.

On April 26, 1899, Mrs. Sarah Utermehle, the widow and executrix of the deceased, propounded the will for probate. On the same day Rosa M. Taylor and Mamie E. Norment, the two daughters of the testator, and his grandson, the appellant, who were his only next of kin and sole heirs-at-law, executed and caused to be filed in a court a paper-writing, whereby they waived citation and notice by way of publication, and consented that the court might act upon the petition of the executrix for probate without further notice to them. On the same day the will was by order of the court duly admitted to probate — of course, only as a will of personalty, in accordance with the law of the District, as it then stood.

The executrix then gave bond in the sum of $20,000 for the payment of all just debts and claims against the deceased, all damages that might be recovered against her as executrix, and all the legacies bequeathed by the will, and letters testamentary were issued to her. She proceeded with the administration, paid the funeral expenses, and other charges, the legacies to the three nieces, and the legacy to the appellant of the promissory note for $750, with the accrued interest thereon, amounting to the sum of $2,116.88. She filed no inventory, but filed a statement of account in the particulars specified on May 14, 1890. The personal property, other than as thus disbursed, she retained for herself in accordance with the terms of the will, and converted it to her own use. It is stated that she disposed of a very large part of it in charities.

Besides the legacy of the note for $750 and interest, the appellant received his devise of the Young Law Building, sold it soon afterwards for $20,000, and applied the proceeds to his own use. He also received from his grandmother, apparently in the way of a gratuity, sufficient money to pay a mortgage of $11,500, with some accrued interest, which rested on a farm that he had purchased in Frederick county, Maryland. During all this time he does not appear to have

ever in any way manifested dissatisfaction with his grandfather's will, or protested against it.

Mrs. Taylor and Mrs. Norment, the daughters and principal devisees of the real estate of George W. Utermehle, entered into possession of that property forthwith, and made partition of it between themselves, each quitclaiming to the other. Immediately afterwards, on July 18, 1889, Mrs. Norment conveyed all her real estate to her husband, Samuel Norment, who died in possession of it in 1891. This conveyance by Mrs. Norment to her husband would appear to have been procured by some duress exerted by him. At all events, after his death proceedings in equity were instituted by Mrs. Norment to vacate the deed. She was the second wife of Samuel Norment, and had two children by him; but there were children by his first wife. The result of the proceedings was a compromise ratified by the court, whereby Mrs. Norment received substantially about one-third of all the real estate that had belonged to Samuel Norment.

The caveator was about twenty-three years of age at the time of the death of his grandfather. He testifies that pleasant relations existed between him and his grandfather, and apparently no unpleasant, although evidently no intimate, relations existed between him and other members of his family. He was present at the reading of his grandfather's will immediately after the funeral, and, although disappointed, made no objection thereto. On the next day at the suggestion of his aunt, Mrs. Taylor, he was present again at his grandfather's house, where there were assembled his grandmother, Mrs. Sarah Utermehle; his aunts, Mrs. Rosa M. Taylor and Mrs. Mamie E. Norment, besides himself, and no one else, as it would seem. His account of what was then and there said and done is, in substance, that Mrs. Taylor did all the talking; that she stated that the will of his grandfather had virtually cut off the appellant; that it had been at the solicitation of Mrs. Taylor and her husband, Dr. Leroy M. Taylor, that his grandfather had left the Young Law Building to him; that his grandmother, however, would, at her death, equalize the matter for him, as she had all the personal property where-

with so to do; that his grandmother wanted to know the amount of the mortgage on his farm, as she desired to pay it for him, and that he thereupon stated the amount as being $11,500. The talking, as stated by him, was all done by Mrs. Taylor. He does not state that Mrs. Norment took any part in it, but that his grandmother seemed to assent to everything that was said by Mrs. Taylor, and that she repeated after Mrs. Taylor that she desired to pay the mortgage upon his farm, which she did in fact almost immediately afterwards.

This conversation the caveator now claims to have amounted to a promise made to him, that, if he would not oppose the probate of his grandfather's will, his grandmother would equalize the matter for him in and by her own will. And he says that it was in reliance upon this assurance that he signed the paper by which he consented to the probate. He states, also, that some days afterwards he was requested by Mr. Woodward, who it seems was the attorney who had drawn the will, and was one of the witnesses to it, to go to the office of the Register of Wills; that he went and met there Mr. Woodward, Dr. Taylor, Mr. Norment, his grandmother Mrs. Sarah Utermehle, Mrs. Norment, and Mrs. Taylor; that he was then asked to sign the paper, which the others had already signed, agreeing to the probate of the will; that he did sign it, but without reading it; that he said nothing at all; that thereupon either Dr. Taylor or Mr. Norment said to him: "That is worth $100,000 to you;" that he replied, " I am much obliged — is that all you wish me ? " that they said, " that is all;" and that he then walked away.

On March 13, 1893, Mrs. Sarah Utermehle, the appellant's grandmother and the legatee of the personalty and devisee of part of the realty of George W. Utermehle, departed this life, leaving the same heirs-at-law and next of kin as her deceased husband, and leaving also a will, executed on July 5, 1889, which date, as will be noticed, was within a little more than two months after the time of the alleged promise to the caveator that his grandmother would at the time of her death equalize his share of the estate, according to his

own statement. In and by this will the testatrix divided her estate equally between her two daughters, Rosa M. Taylor and Mamie E. Norment, and her grandson, the caveator, giving one-third to each, and appointed her two daughters as her executrices, with the request that only a nominal bond should be required.

Rosa M. Taylor, Mamie E. Norment, and Charles H. Utermehle executed and caused to be filed in court a paper waiving citation and notice for the probate of this will and agreeing to such probate without further notice; and accordingly the will was admitted to probate on March 17, 1893. It seems, however, that some question was raised by the caveator, as to the allowance of commissions to the two executrices on the ground that this would give them an advantage in the estate, and they agreed to renounce their commissions. He made no objection then or afterwards on the ground of any alleged failure by his grandmother to perform the promise which he claims to have been made by her, as already stated. Under the administration he received his distributive share of the personalty, amounting to nearly $78,000, and the administration was settled and closed. He received also his share of the realty, consisting of square No. 765, which had been the residence of his grandfather and grandmother, made partition of it with his aunts, executed quitclaim deeds to them, mortgaged his own one-third part of it while it was yet undivided, and subsequently allowed it to be sold under the mortgage. This partition took place in 1895.

On May 19, 1900, when ten years had just elapsed from the final settlement of the estate of George W. Utermehle, and after the lapse of nearly seven years after the final settlement of the estate of Sarah Utermehle, the caveator addressed identical letters to his aunts, Rosa M. Taylor and Mamie E. Norment, in which he alleged that at the time of his grandfather's death he was under a misapprehension and ignorant regarding his alleged rights in his grandfather's estate; that misrepresentations had been made in regard to those rights and his interests in the premises; that he now denied the validity of his grandfather's will either as to realty or as to

personalty; and that he tendered himself ready to account to Mrs. Taylor and Mrs. Norment for what he had received under the alleged will.

This notification, it seems, he followed up with a suit in ejectment, and with a caveat filed in the probate court on June 9, 1900, against the validity of the will. Mrs. Taylor and Mrs. Norment answered the caveat, and at the same time filed a petition asking for a probate of the will of George W. Utermehle of December 7, 1887, as a will of real estate, under the act of Congress of June 8, 1898.

Pending proceedings in the probate court upon this caveat, and before any issues had been formulated between the parties, Mrs. Rosa M. Taylor died on January 22, 1901, leaving a will executed on December 3, 1889, whereby she devised and bequeathed all her estate to her husband, Dr. Leroy M. Taylor, in fee simple, subject to an annuity of $3,000 a year in favor of their son and only child, Leroy M. Taylor, Jr., and also nominated her husband as the executor of her will. On March 18, 1901, this will was duly admitted to probate, and letters testamentary thereon were issued to Dr. Taylor.

Thereupon, on the same day, Dr. Taylor filed his petition in these proceedings, in which he set forth the will of his deceased wife in his favor, and at the same time set forth a declaration of trust executed between himself and his son, Leroy M. Taylor, Jr., on February 15, 1901, wherein it was stated that the property devised and bequeathed to him by his wife in fee simple was in fact held by him under a secret trust between her and him for the benefit of their son, Leroy M. Taylor, Jr., and his children, of whom there were then two, yet in their infancy, Mildred Taylor and Dorothy Taylor, with the reservation of certain rights and powers for himself; and he asked that he himself and all the persons named might be made parties to the present proceedings in the place and stead of Mrs. Rosa M. Taylor. They were accordingly made parties, and Leroy M. Taylor, Jr., was appointed by the court as guardian *ad litem* for his infant children.

At last the court determined that issues should be formulated between the parties, to be tried in the probate court itself, with a jury, under the act of June 8, 1898, and there were six such issues drawn up. The first raised the question whether the caveator was estopped to deny the validity of the will of George W. Utermehle as a will of personal property. The second raised the question whether he was estopped to deny the validity of the will as one of realty. In the third issue the question of testamentary capacity was raised; in the fourth, that of undue influence; in the fifth, that of fraud, and in the sixth, that of duress. The question of the application of the statute of limitations, which was raised by the caveat and petitions, and all other questions, were reserved for future determination by the court. The caveator, Charles H. Utermehle, was made plaintiff for the purpose of the trial, and all the other parties, as caveatees, were made defendants.

On March 17, 1902, a jury was empanneled and sworn in the cause, and the caveator proceeded to adduce his testimony, which mainly was that of himself. It was mainly addressed to the question of estoppel and to an explanation of his delay in asserting his alleged rights. When the counsel for the caveator announced their testimony on this point as closed, they proceeded to offer testimony upon the other issues. To this the counsel for the caveatees objected and moved the court to direct a verdict against the caveator on the issue of estoppel, and, following that, upon all the other issues. The court ruled out for the time being the offer of the caveator to adduce testimony on the other issues than estoppel, and seems to have adjourned the jury for the purpose of consideration of the question of estoppel as now raised by the record and by the testimony in the cause. After such consideration the court instructed the jury to render a verdict against the caveator on each and all the issues, and the verdict was so rendered and recorded.

Thereupon an order or decree was rendered, confirming the order of the court of April 26, 1889, whereby the will of George W. Utermehle had been admitted to probate as a

valid will of personalty; and now admitting it to probate also as a valid will of real estate.

From this decree the caveator, Charles H. Utermehle, has appealed to this court.

*Messrs. R. Ross Perry & Son, Mr. D. W. Baker,* and *Mr. Wilton J. Lambert* for the appellant.:

1. Can the appellees invoke the doctrine of estoppel in their behalf when one of them is a devisee under the will, and the others claim from a devisee; both of whom are charged with exercising undue influence or fraud in the making of the will, or in making false and fraudulent misrepresentations to prevent the will from being attacked by the appellant? It is confidently insisted that such is not the law, and that the appellees have no right, in the present state of the record, to raise any question of estoppel; that the court had no right to permit this question to be raised by appellees, who, by reason of their own misconduct, cannot be regarded favorably in courts of either law or equity. *Neblett* v. *Mc-Farland,* 92 U. S. 193.

2. If the caveator was ignorant of the facts surrounding the making of the alleged will at the time that he acted under the will, his action, while ignorant, in no way estops him from attacking the validity of the will. *Fisher et al.* v. *Boyce,* 81 Md. 46; *In re Miller's Estate,* 159 Pa. St. 562; *Dickinson* v. *Dickinson,* 61 Pa. St. 401; *Medill et al.* v. *Snyder et al.,* 61 Kan. 15; *Lee* v. *Templeton,* 73 Ind. 317; *Fletcher* v. *Holmes,* 25 Ind. 469; *Andrew* v. *Lyons,* 11 Allen (Mass.), 350; *Brant* v. *Virginia Coal Co.,* 93 U. S. 335; *Henshaw* v. *Bissell,* 18 Wall. (U. S.) 271; *Farmers, etc., Bank* v. *Farwell,* 19 U. S. App. 262; *Halloran et al.* v. *Halloran et al.,* 137 Ill. 112; *Clinton* v. *Haddan,* 50 Conn. 84; *Taylor* v. *Cussan,* 90 Va. 43; *Cumberland C. & I. Co.* v. *Sherman,* 20 Md. 117.

3. On the question of laches raised by the court below, it is only necessary to say that in this case the caveator could, under the law, file his caveat or bring his action of ejectment

at any time within twenty years from the death of George W. Utermehle; that, at the time that he filed his caveat to the will, as far as realty is concerned, *probate thereof had just been asked,* and that he could not have before this time questioned the will as a will of real property, except by an action of ejectment. In *Barbour* v. *Moore,* 4 App. D. C. 535, the action of ejectment was not brought until nine years after the making of the will, and this was not considered laches. See also *Magee* v. *Welsh,* 18 App. D. C. 177, where a demurrer was overruled to a bill, filed June 23, 1900, to vacate a deed of real estate dated July 1, 1843 (over fifty-six years before), charging that the deed was fraudulently made by the ancestor of the complainants, the ancestor dying May 23, 1891).

4. If the caveator acted in ignorance of his legal rights, or was wanting in knowledge of the rule which compelled him to elect, his acts under such circumstances did not constitute an estoppel. The rule of law that estops a party from setting up the truth, being a harsh rule, is necessarily strictly construed, and the authorities hold that conduct or declarations founded upon ignorance of one's rights do not estop a person. *Henshaw* v. *Bissell,* 18 Wall. (U. S.) 271; *Medill et al.* v. *Snyder et al., supra; Watson et al.* v. *Watson,* 128 Mass. 152. See also *Spread* v. *Morgan,* 11 H. L. Cas. 587; *Wheeler* v. *Smith,* 9 How. (U. S.) 55; *Sparlook* v. *Brown,* 91 Tenn. 261; *Williams* v. *Williams,* 63 Md. 371.

5. It was not necessary for the caveator, on account of the condition of the property, to make any tender other than an offer on his part to account. In other words, he was not compelled in this case to offer restitution, or make restitution, to the caveatees when they, the caveatees, had in their possession property which would belong to himself if the will were not broken and for which he was willing to account to the caveatees if the will were broken. See *Farmington Savings Bank* v. *Curren,* 72 Conn. 349; *Rabb* v. *Voss,* 155 U. S. 13; *Smith* v. *Gilmore,* 7 App. D. C. 192. Those authorities lay down the proposition that a person cannot at the same time hold inconsistent positions; he cannot contend for something and

at the same time try to repudiate the ground upon which he bases his contentions. Upon an examination of the authorities, it will be found that there is no case where a court has decided that a caveator, an heir, must turn over property to caveators, other heirs, they also having property from the ancestor, when the heir, the caveator, intends to contest the will; all the courts have decided is this: that a legatee must tender to the executor the legacy received before he can contest the will, and that a devisee must make an offer of tender in his bill for partition of the estate with the other heirs, for nothing is clearer or more certain that the only thing that a party is required to do is substantial justice, and a party cannot claim benefits or emoluments by virtue of a will, deed, or other contract, and then attempt to gain other benefits by repudiating the will, deed, or contract. But there is no rule of law that requires a party to give up that which he can rightfully keep without injuring any one to some person who is not entitled, as a matter of justice and equity, to receive the same. While we can find authorities without number which speak of the return of the consideration, the restitution of a legacy, still, upon an examination of them, we will find that in those cases there was no contention raised as to whether or not the consideration must be actually returned or the legacy restored. See *In re Peaslee's Will,* 25 N. Y. Supp. 940. In this case, there is no executor who could receive this money; the caveatees have received some hundreds of thousands of dollars more than the caveator; there is no other will, and the caveator has made such tender and offer that the parties are put in a position where, whatever the result may be, none of the caveatees can in this case be the loser because of the payments originally made to the caveator, and therefore the caveator, in this case, comes within the exception laid down in the New York case. See also *Neblett* v. *McFarland,* 92 U. S. 103; *Judge of Probate* v. *Stone,* 44 N. H. 593; *Medill et al.* v. *Snyder et al.,* 61 Kan. 15; *Wheeler* v. *Smith et al.,* 9 How. (U. S.) 55; *Montgomery* v. *Pickering et al.,* 116 Mass. 227; Bigelow on Fraud, 424; *Howard* v. *The Railroad Co.,* 14 App. D. C.

297. In *Lyon* v. *Allan,* 11 App. D. C. 549, this court held that a tender was absolutely necessary. *Contra, Union Pacific RR. Co.* v. *Harris,* 158 U. S. 326. The decision of the Supreme Court of the United States is supported by the following authorities: *Girard* v. *Car Co.,* 123 Mo. 358; *Westlake* v. *St. Louis,* 77 Mo. 47; *O'Donnell* v. *Clinton,* 145 Mass. 461; *Smith* v. *Holyoke,* 112 Mass. 517; *Mullen* v. *Old Colony RR. Co.,* 127 Mass. 86. A few of the cases where the courts have required a repayment of the legacy are: *Hamblett* v. *Hamblett,* 6 N. H. 333; *Holt* v. *Rice, Adm.,* 54 N. H. 398; *Miller's Estate,* 159 Pa. St. 562. A person who does not elect with knowledge of all the facts does not come within the general rule. *Fisher* v. *Boice,* 81 Md. 46. In *Madison et al.* v. *Lamon et al.,* 170 Ill. 82, there was no offer on the part of the complainants to account for what they had received under the will or to repudiate the bequest to them under the will. In *In re Soule's Will,* 3 N. Y. Supp. 29, the court held a tender made of money received for a legacy during the trial of the case insufficient. There was, first, a dispute about the probate, which was compromised, and payments were made under the compromise, and that, afterwards, without alleging any fraud, mistake, or ignorance, a caveat was filed. The court, in its opinion, treats the tender in that case as coming under the ordinary law of tender, and does not attempt to draw any distinction between a tender in a case of this kind and in any other suit. In *Chipman et al.* v. *Montgomery et al.,* 63 N. Y. 228, the action was in the nature of a proceeding for the construction of a will. Certain parties sought to overthrow the will and claimed the property as though the maker thereof died intestate. The court, while laying down the general rule, speak of the return of all that has been received by legatees, but, while doing that, they use the following language: "A person cannot accept and reject the same instrument. Courts of equity proceed upon a theory that there is an implied condition that he who accepts a benefit under an instrument shall adopt the same in all its provisions and renounce every right inconsist-

ent therewith." It will thus be seen that a tender is not necessarily a condition precedent to a proceeding to rescind or annul a will, deed, or other writing, but that the whole and only object of the tender is to place the parties in such a position that no one will be injured, and that where a person repudiates an instrument he may offer in his pleadings to restore that which he has when such offer places the parties substantially in the same position that they would be in if the instrument had never been executed.

6. It was not necessary for the caveator to do anything more than he did, not only on account of the condition of the property, but on account also of the action of the caveatees. Where the defendant refuses, when a person offers to tender money, to receive the money, it is not necessary that the money should be actually produced. *Barker* v. *Parkinhorn,* 2 Wash. C. C. 144; *Hazzard* v. *Barnabas,* 10 Cush. (Mass.) 67. The above case was a tender at law which was, under the rules of common law, somewhat technical. If the suit were a proceeding in equity to avoid an instrument, it would not be necessary that a good tender, such as required by law, should be made, for no such tender is required in a court of equity. *Parkington et al.* v. *Turvis,* 128 Ind. 186; *Shuee* v. *Shuee,* 100 Ind. 477. Again, where a party to a contract, where specific performance is sought, refuses the performance and insists that he is not bound by the contract, no tender of the purchase money need be made before bringing the suit. *Wright* v. *Young,* 70 Am. Dec. 453; *Hazzard* v. *Loring,* 10 Cush. (Mass.) 67; *Dorsey* v. *Barbee,* 12 Am. Dec. 296. Again, the law never requires a person to do a useless thing; and, applying this principle, we are of the opinion that the absolute and unqualified refusal of a defendant to accept an assignment relieves the plaintiff of the duty of making a formal tender of a written transfer. *McDonald* v. *Wolf,* 40 Mo. App. 308; *Bank of Columbia* v. *Hagner,* 1 Pet. (U. S.) 467; *Chaney* v. *Libbey,* 134 U. S. 81; *Hunter* v. *Daniels,* 4 Hare, 420, 433; *Moore* v. *Crawford,* 130 U. S. 142.

7. The declarations made by the testator, not only some years prior to the making of the alleged will, but down to as

late as 1886, a year prior to the making of the alleged will, were offered to show not only the relationship that existed between the caveator and the devisor, but also the testamentary disposition of the testator, as long as his mind was free and untrammeled and not interfered with by undue influence, nor clouded by insanity. It was contended, on behalf of the appellees, that these declarations come within the ruling of the Supreme Court of the United States in the case of *Throckmorton* v. *Holt,* 180 U. S. 552. In that case the issues involved were forgery and revocation, and the Supreme Court of the United States held that, on these issues, parol evidence was not admissible, because they could .throw no light at all on either issue. The court does go further, and intimates that parol evidence is admissible in a case where the issue is insanity, but does not touch upon the question of undue influence. See also *Shailer* v. *Bumstead,* 99 Mass. 112; *Moore* v. *McDonald et al.,* 68 Md.; *Davis* v. *Calvert,* 5 Gill & J. (Md.) 269; *In re Estate of Goldthrop,* 94 Iowa; *Harp* v. *Parr,* 16 Ill. 470; *Taylor et al.* v. *Pegram et al.,* 151 Ill. 106; *Hammond* v. *Dyke,* 42 Minn. 272.

*Mr. A. S. Worthington* and *Mr. T. Percy Woodward* for the appellees.

*Mr. Justice* MORRIS delivered the opinion of the Court:

There are seven assignments of error: (1) That it was error to hold that the caveator was estopped, at the time of the filing of his caveat, from disputing the will of George W. Utermehle as a will of personalty; (2) that it was error to hold that he was estopped from disputing it as a valid will of realty; (3) that it was error to instruct the jury to return a verdict against the caveator on the issues of estoppel; (4) that it was error to direct a verdict against the caveator on all the issues; (5) that it was error to direct a verdict against the caveator on the issues that did not involve the question of estoppel; (6) and (7), which are merely duplications of each other — that it was error to exclude the testimony of

the caveator as to certain alleged statements and declarations claimed to have been made to him by his grandfather as to his testamentary intentions toward the caveator.

1. Taking up the last of these assignments first, we find that the purport of the statements and declarations referred to is that George W. Utermehle stated to the caveator on one or two occasions, that if he, the caveator, would not take sides in certain legal proceedings then pending in which he, the grandfather, was involved, he, the grandfather, would leave to the caveator a share of his estate equal to that which he would leave to each of the caveator's two aunts. Now it is very plain to us that under the decision of the Supreme Court of the United States in the case of *Throckmorton* v. *Holt,* 180 U. S. 552, evidence as to such alleged statements was properly excluded.

It is argued, however, that notwithstanding that decision, such statements are admissible in evidence where there is question of the mental capacity of a testator. But we fail to see the force of this argument. No one questions, and least of all the caveatees question, the mental capacity of George W. Utermehle at the time at which these statements and declarations are alleged to have been made. And if the meaning of the argument is that they tend to show his subsequent mental incapacity at the time of the making of his will, the plain answer is that they are utterly irrelevant and ineffectual for any such purpose.

2. The substantial question in the present case is that of estoppel. This question controls the whole case, and if the trial court has decided it correctly, the rulings upon other questions are of no consequence. We think that it did decide it correctly.

The doctrine is too well established to need either argument or citation of authority in support of it, that one, who takes a benefit under a will, cannot thereafter be heard to dispute or deny the validity of the will, and it is needless to say that the doctrine is founded upon the plainest principles of justice. We do not understand that this rule of the law is in any manner questioned by counsel for the

caveator, nor do we understand it to be denied that in the absence of fraud or misrepresentation the action of the caveator in the premises, as detailed by himself, would constitute a full and complete estoppel upon him to prevent him from contesting the validity of his grandfather's will. He agreed to the probate of that will, and he took property under it, both real and personal, and that this, especially after the lapse of so long a period as eleven years that intervened between the probate and the filing of his caveat that led to the present proceedings, would constitute an estoppel, is very evident.

The claim, however, on behalf of the appellant is that what he did he was induced to do by misrepresentation and fraud; that he was ignorant at the time and for a long time afterwards of the law of estoppel, and that as soon as he discovered what he calls his rights, he notified Mrs. Taylor and Mrs. Norment, and repudiated the will of his grandfather, and offered to account to his aunts, in some way not very clearly defined, for what he had received under the will. This offer to account he regards as equivalent to a tender of the property received by him.

It is exceedingly improbable that all the caveator's relatives, including his grandmother, conspired to defraud this young man. It is more than probable that the promise, which was made to him, if any there was actually made, was that he should share equally with his aunts in his grandmother's estate; and this promise his grandmother fully and faithfully performed. But, however this may be, and even if the alleged promise was in fact what he now claims it to have been, it is difficult to see how a promise by his grandmother and subsequent failure on her part to perform it can constitute misrepresentation and fraud on the part of Mrs. Taylor and Mrs. Norment sufficient to induce the appellant to refrain for eleven years from contesting the validity of his grandfather's will. And this is absolutely all the misrepresentation and fraud that is charged or sought to be shown.

There is no pretense that Mrs. Taylor was not acting in

good faith when she made the alleged promise on behalf of her mother; nor is there any pretense that Mrs. Norment was guilty of any fraud in connection with it when she merely stood by and said nothing. Neither of them made any promise whatever on her own account; nor is there either allegation or evidence of any fraud, or fraudulent concealment, or fraudulent inducement of any kind practiced by them upon the appellant or held out by them on their own account on which he was led to act. That they were probably desirous to have the will of their father probated without controversy and its validity conceded may well be assumed, although it is not entirely apparent that they received any more of the whole estate under the will than they would have received under the law if there had been no will. But any desire which they may have had to avoid a possible contest cannot be charged to them as fraud. We find no evidence whatever in the record of any fraud or mispresentation on their part.

The only promise which was made was the promise of the appellant's grandmother, made, it is true, through Mrs. Taylor, but yet, notwithstanding that fact, the promise exclusively of the grandmother. And it was the grandmother who mainly, if not exclusively, profited by the exclusion of the appellant from any large share in the estate. But if the plaintiff relied upon this promise and was induced thereby to forego any action against the will, and that promise was not afterwards performed by his grandmother, the remedy of the appellant was not to return to an attack upon the will, but was by action of some kind against his grandmother's estate, and he took no such action. Her delinquency, if there was any such, which we greatly doubt, should not be visited upon Mrs. Taylor and Mrs. Norment, who are not shown to have had any part in it.

Then, if there was no misrepresentation or fraud on the part of Mrs. Taylor or Mrs. Norment, it is wholly unimportant whether, at the time when he committed the acts which constitute the estoppel, the appellant was or was not ignorant of the law of estoppel. By those acts he led Mrs. Tay-

lor and Mrs. Norment into a situation from which, notwith-
standing the ingenious argument of counsel to the contrary,
they cannot now be restored to their original status.   Upon
the faith of those acts and the probate of the will they
surrendered their right to a large amount of personal prop-
erty, and a large amount of real estate also, to which they
would have been entitled in the absence of a will.   It is
impossible to tell from the record before us whether they
fared any better with the will than they would have fared
without it; but it is very evident that, by the bequest of the
entire personalty by the will to their mother, they lost a
valuable interest to which they cannot now be restored.
It is impossible to restore the original situation; and the
attempt to do so would be wantonly to question titles that
have long since accrued, including the very title which the
caveator has himself disposed of, to the Young Law Building.

3. Certain cases are cited to show that, when a person
has acted in ignorance of his legal rights under a will as to
election whether to take under the will or to assert an inde-
pendent title against the will, he will not be estopped, if in
due time he tenders back to the executor what he has re-
ceived under the will.   These cases are *Spread* v. *Morgan,*
11 H. L. 588, and *Watson* v. *Watson,* 128 Mass. 152.   But
we do not understand that these cases are here applicable.
It is, perhaps, a matter of minor importance that there is
here no executor now in existence of the estate of George
W. Utermehle to whom the appellant could tender back the
amount of the personalty which he received from that estate;
and perhaps it is equally unimportant that no tender of the
real estate received and appropriated by the appellant under
the will could be tendered back to such executor in any
event, as such executor had nothing to do with the real
estate.   It is perhaps more important that the appellant
has precluded himself from making any tender whatever of
such real estate to any one by the fact that he has conveyed
it away; but assuming that such tender or surrender could
be made by the appellant, and assuming that the offer to
account which he has made is the equivalent of a proper

tender, which is very greatly to be doubted, but which we do not decide, yet the appellant's case is not governed by the authorities cited.

The two cases in question were cases in equity wherein, according to the rule of equity, a party was required to make his election as to which he would take of two inconsistent rights. In the first-mentioned case, that of *Spread* v. *Morgan,* in the English House of Lords, a man had come into the possession of one piece of property under an ancient entail, and into the possession of another piece of property under a more recent family settlement. The details of the case are complicated, but it will suffice to say that it was inconsistent in equity for the party to hold both pieces as against another man who was also entitled in a subordinate manner to one of the pieces under the family settlement. He was required to elect which of the two pieces he would hold; or rather, the inquiry was whether he had in fact elected when a court of equity held that he should have done so. It appeared that he knew all the facts, but that he did not know that by the rules of equity he was bound to elect.

Speaking for the House of Lords, sitting as a court of appeal, Lord Chancellor Westbury said:

" It is true, as a general proposition, that knowledge of the law must be imputed to every person; but it would be too much to impute knowledge of this rule of equity. Election, as a question of intention, of course implies knowledge. There may be a series of unequivocal acts from which an intention to elect and the fact of actual election may be inferred; but, under the circumstances of the present case, it does not appear to me that any such inference can be drawn."

And Lord Chelmsford, in the same case, said: " In order that a person who is put to his election should be concluded by it, two things are necessary: First, a full knowledge of the nature of the inconsistent rights and of the necessity of electing between them; second, an intention to elect, manifested either expressly or by acts which imply choice and acquiescence."

In the case of *Watson* v. *Watson,* in the Supreme Judi-

cial Court of Massachusetts, three nephews and an uncle held a piece of real estate as tenants in common. The uncle died leaving a will, by which he made bequests of his personalty specifically to his nephews; devised about two acres of the common property, by specific description of it, to one of the nephews, James; devised ten acres of the same property, by similar specific description, to a grandnephew, Horace; and devised the remainder of his real estate, specifically excluding that previously devised, to another nephew, Albert, for life, with remainder in fee simple to Albert's son. One nephew, Edward, received none of the real estate, and only a legacy of $50 in money. All the parties received their legacies and entered upon the lands devised to them, notwithstanding that, as stated by the court, the devises were ineffectual as against the co-tenants, unless they had confirmed it.

It appears that all the parties were ignorant of the rule of law laid down in Massachusetts in the case of *Hyde* v. *Baldwin,* 17 Pick. 303, by Chief Justice Shaw, which was this, as stated by the chief justice himself:

" It is now a well-settled rule in equity that, if any person shall take any beneficial interest under a will, he shall be held thereby to confirm and ratify every other part of the will; or, in other words, a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will."

Upon being informed of this rule two of the three nephews took no steps to restore to the executor the personal property which they had received, or otherwise to renounce their claims under the will, further than to sign a paper wherein they reserved to themselves the right thereafter to elect, upon a decision of the law, if they should desire. As to them the court held that the rule of law, as laid down in the case of *Hyde* v. *Baldwin,* applied. But the third nephew, Edward, who had received a legacy of $50, but none of the land, stood, it was said, in a different attitude. " Immediately upon being

informed of the rule of law, little more than a year after the probate of the will, and before the executor had settled any account in the probate court, or the position of any other person had been changed, he returned his legacy to the executor, and gave him notice that he elected not to take it." It was said by the court, in a suit thereafter instituted for partition of the whole property, that he could not be held to have made such an election as should deprive him of the right under his independent title to partition of the whole estate.

In that case the Supreme Judicial Court of Massachusetts, by Mr. Chief Justice Gray, said:

" In this commonwealth it has been decided, in accordance with the opinions of Lord Mansfield, Lord Loughborough, and Lord Redesdale, that the rule (that laid down by Chief Justice Shaw, as already stated) holds good at law as well as in equity. * * * But this doctrine, whether applied in practice on the common law or on the equity side of the court, depends not upon technical rules, but upon principles of equity and justice, and upon actual intention. An election made in ignorance of material facts is, of course, not binding when no other person's rights have been affected thereby. So if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed. This has been settled in England by a long series of authorities, of which it is sufficient to cite a few. (Citing cases.)

" Where the law allows the probate of a will in either of two forms — in common form, *ex parte,* upon being presented by the executor, or in solemn form, upon the application of any person interested and notice to all others — a person who has received a legacy under a will proved in common form is permitted, on tendering back the amount to the executor, or bringing it into court, to contest the validity of the will, and compel it to be proved in solemn form. *Bell* v. *Armstrong,* 1 Add. Eccl. 365, 374, and cases cited. *Hamblett* v. *Hamblett,* 6 N. H. 333; *Holt* v. *Rice,* 54 N. H. 398."

We have been at pains to cite these two cases *in extenso,*

because they are the principal reliance of the appellant, and his cause was tried in the court below with special reference to the case of *Watson* v. *Watson*. But we are very clearly of opinion that the appellant is not aided by these authorities. His case is not one of election, but of estoppel. He made his election, when election was open to him; and he is now estopped from seeking that which he declined. It is idle for him to say that he did not know that he had the right of election, and that he acted in ignorance of his rights. Every man of ordinary sense and capacity is bound to know that he cannot take a benefit under a will and at the same time seek to overthrow the will. It was distinctly presented to him to make that election when he was asked to sign the consent to the probate of his grandfather's will; and he then made it, and he confirmed the election by taking his legacy and the real estate devised to him and disposing of it beyond the possibility of his ever being able to return it to the estate. The election referred to in the cases of *Watson* v. *Watson* and *Spread* v. *Morgan* is election between two inconsistent rights, not election between two inconsistent courses of action. At the time of the probate of his grandfather's will he knew, as well as he did at any time afterwards, that, if there were no such will, or if he could overthrow such will, he could get a larger share of his grandfather's estate than he could get, or did get, under the will. There was no ignorance on his part of any rights which he might have. What he discovered afterwards, if he discovered anything, was not any alleged right, but the testimony to support that right, which makes a very different proposition.

It is very plain from what is distinctly stated by the Supreme Judicial Court of Massachusetts in the case of *Watson* v. *Watson* that the right of election there mentioned must have been exercised before the executor has settled his accounts, and before the position of any person in interest has been changed. It is idle to argue here that, because the appellees in these proceedings are in possession of some of the real estate that belonged to George W. Utermehle, therefore the position of no one in interest at the time of the probate

of his will has been changed. It is sufficient to say in answer to this argument that the action of the appellant enabled the executrix of George W. Utermehle to divert the whole of the personalty of that estate from Mrs. Taylor and Mrs. Norment, who would have been entitled to a large share of it in the absence of a will. They lost all right to this personalty; they lost all right to a large portion of the real estate, and it is not apparent that the appellant could compensate them for this loss by the surrender of all that he received under the will, even if he were in condition to make such surrender.

We are very clearly of the opinion that it is now too late for the appellant to question the validity of his grandfather's will, and that he has estopped himself from so doing. His course of conduct, as conceded and proved by himself, conclusively and as matter of law operates as an estoppel upon him. There was nothing whatever in the case to be submitted to a jury; and the court was entirely right in directing a verdict for the caveatees. A verdict for the caveatees on the question of estoppel necessarily superinduced a verdict for them on the other issues.

4. We may add here that it is greatly to be questioned whether the probate court had jurisdiction in this case to formulate and try the first of the six issues which were drawn up — that of the estoppel of the caveator to dispute the validity of the will of George W. Utermehle as a will of personalty, or whether, if it had the jurisdiction, the issue should have been allowed under the circumstances of the case.

The will had been admitted to probate as a will of personal property in 1889, with the concurrence and consent of the appellant. Even if that consent had been procured by misrepresentation and fraud, as claimed by the appellant, that fact would have made no difference in the present connection. Acting upon that consent, the executrix took possession of the personalty and distributed it, in accordance with the provisions of the will, to the legatees therein, the principal part of it to herself as the principal legatee. She settled her account, and the administration was at an end; and there had been no case in court for ten years before the appellant's

caveat was filed. Even if the will were declared null and void as the result of that caveat, the statute of limitations would interpose an insuperable bar to the recovery of that personalty, or of any part of it, by any administrator of the estate of George W. Utermehle, or by any one else in interest.

Moreover, upon the caveator's own showing, he received one-third of his grandmother's personal as well as real estate, equal to what each one of his aunts received. Apart from the estoppel which would preclude him from denying that this was the money of his grandmother after he had received it as such, and presuming that it was lawfully and in fact the money of his grandfather, he received more of the personal estate of his grandfather, by the amount of the note for $750 and interest, than either Mrs. Taylor or Mrs. Norment received. With what propriety, then, or to what reasonable purpose could he seek to have the will declared void as a will of personalty? He would not be entitled to any more, or to as much as he actually received, if the will were so declared.

There was nothing in the appellant's caveat that justified the reopening of any inquiry as to the validity of the will of George W. Utermehle as a will of personal property, and it was an irregularity to have allowed it. But no harm has come from this irregularity, since the result has been to confirm the previous probate of the will, and consequently the settlement of the personal estate thereunder.

From what we have said it follows that the decree appealed from must be *affirmed, with costs. And it is so ordered.*

A writ of error to the Supreme Court of the United States was prayer by the appellant and allowed June 2, 1903.