In the Matter of the Liquidation of the STATE BANK OF BINGHAMTON.

Supreme Court, Broome County, July 31, 1935.

*Hinman, Howard & Kattell* [*George L. Hinman* of counsel], for the petitioner.

*Walter S. Logan* [*Jenkins, Deyo & Hitchcock* of counsel], for the Federal Reserve Bank of New York.

PERSONIUS, J.   This matter was determined August 23, 1934 (*Matter of State Bank of Binghamton*, 152 Misc. 579).   The Federal Reserve Bank (hereinafter called the respondent), now seeks a modification of that part of the decision contained in " the next to the last paragraph of the opinion."   The proceeding involves the rights of the respondent under sections 350-j and 350-l, subdivision 2, of the Negotiable Instruments Law.   We held (1) that Federal Reserve Bank as collecting agent did not elect under section 350-j to treat the items involved as dishonored, and (2) that *" the payee owner ' could make the election in place of its sub-agent* (Federal Reserve).' "   (Italics ours.)   The respondent contends *that the election* provided for in section 350-j *can only be exercised by the agent collecting bank*, that the privilege of exercising such election " is   *   *   *   lodged exclusively in ' the agent collecting bank.' "

There is little judicial authority on the subject.   We are cited to articles in law reviews.   They disagree.   In one we read: " Apparently the owner is given no power in the premises and the determination of whether the election shall be made is left entirely to the discretion of the collecting bank."   (8 Tul. Law Rev. 244, Feb. 1934.)   In another: " But a provision affording to the immediate collection agent a right of election   *   *   *   would seem to be designed to afford protection for the payee.   Although he is not specifically given this right it would appear that it should also exist in the payee as principal.   *   *   *   Such election is indicated by

any act revealing an intention to have recourse to prior parties."
(12 N. Y. U. Law Rev. 130, Sept. 1934.)

*Jones* v. *Board of Education, Town of Pelham* (242 App. Div. 17)
is the only authority which we have been able to find or to which
our attention has been directed. In that case a check was presented
through the Federal Reserve Bank and stamped paid. The pro-
ceeds were remitted by draft which was dishonored, the drawee
bank being closed. Later the payee sued the maker. At page 24
the court said: " So, in the case at bar, defendant's [maker's] check
has been paid, and it is released from liability *unless it can be found
than an election to dishonor has been made* with reasonable diligence
(§ 350-j). \* \* \*

" The election to be made is either to hold the drawee because of
non-payment of its check, or to dishonor and hold prior parties.
" \* \* \* It is also my opinion that since the Federal Reserve
Bank was a sub-agent of plaintiff [payee], *plaintiff could make the
election in place of its sub-agent* (§ 350-a), *the Federal Reserve Bank.*"
(Italics ours.)

Respondent says this is dictum. Later in the opinion the court
does refer to certain acts of the Federal Reserve Bank as " an elec-
tion to dishonor the check." Nevertheless, the court expressed
the opinion that the payee owner, as well as the agent, could make
the election. In this the entire court concurred. If we were
inclined to disagree, we might feel bound by this the only·judicial
decision. However, we do not disagree.

*Sections 350-j and 350-l were enacted, not for the benefit of collecting
banks, but for the benefit of owners of items which had been presented
in the usual course by mail*, treated as paid by the drawee bank, which,
however, had failed to make good remittance. The statute sought
to protect the owners of such items against loss through no fault
of their own, caused solely by their having adopted the customary
practice of presenting items to a drawee bank by mail. To accom-
plish this, the statute provides that the items may be treated as
dishonored and recourse had against the maker or other prior party,
or the owner may have priority. True, it specifically authorizes the
agent to make the election, an authority it might not have either
expressly or by implication, but it does not expressly give the agent
sole authority to do so. It would be new doctrine to say that an
agent may do what his principal cannot, that the agent could waive
priority and preserve recourse against the maker, while the prin-
cipal could not. We think the owner principal has at least as much
power and authority as his agent.

The respondent says that the agent collecting bank is in the best
position to determine the advisability of making the election. Is

it? The payee owner naturally has the best information as to the maker. He may prefer to treat the item as dishonored, look to the maker, and receive his pay promptly, rather than to file a prior claim and await the course of liquidation.

The respondent points to the confusion which may result if a payee as well as his agent can elect to treat an item as dishonored. Likewise confusion will arise if the agent collecting bank files a prior claim but the maker pays the payee owner and files a general claim. Apparently in several instances here payees of items have reimbursed themselves or attempted to do so. May they still claim priority under section 350-l? If the parties, in ignorance of their rights or otherwise, by their acts and conduct create confusion, this may not be avoided. Payee owners may not have recourse both ways. However, claims, both general and preferred, must be determined upon the facts, no matter how difficult to ascertain. Quite possibly if the maker paid the payee and the latter's prior claim was also paid, the maker could recover from the payee, but this tends to multiplicity of litigation.

We adhere to our original holding.