In the Matter of the Liquidation of the STATE BANK OF BINGHAMTON.

Supreme Court, Special Term, Broome County, April 5, 1937.

*Hinman, Howard & Kattell* [*George L. Hinman* of counsel], for the petitioner.

*Walter S. Logan* and *Jenkins, Deyo & Hitchcock* [*Charles W. Turner* of counsel], for the claimants.

PERSONIUS, J.   Are the items here involved (checks and cashier's checks drawn on or by the State Bank of Binghamton, here referred to as " Binghamton Bank ") entitled to preference under sub-division 2 of section 350-l of the Negotiable Instruments Law? (All statutory references are to the Negotiable Instruments Law.) This depends on whether the items have been treated as " dishonored " under section 350-j.   All these items were forwarded by the payees, directly or indirectly, to the Federal Reserve Bank of New York (here referred to as " Federal Reserve ") for collection. Federal Reserve was, therefore, " the agent collecting bank."   It forwarded, *i. e.*, presented, them by mail to the Binghamton Bank

for payment. It remitted by its New York draft, which, due to the bank's closing, was dishonored.

Section 350-l, subdivision 2, provides that, as to an item which has *not* been treated as dishonored under section 350-j, "the assets of * * * drawee * * * shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof * * * and such owner or owners shall be entitled to a preferred claim upon such assets." "A trust so created, to arise upon insolvency, is a preference under another name." (*Jennings* v. *U. S. F. & G. Co.*, 294 U. S. 216, 226.) We refer to it as a preference, a preferred claim or as having priority.

General questions relating to all the items were considered in 152 Misc. 579, and 156 Misc. 353. We there determined (1) that the "agent collecting bank," viz., the Federal Reserve, had not elected to treat them as dishonored under section 350-j; (2) that such election might be exercised by the payee-owner as well as the agent collecting bank; (3) that in no event was a cashier's check entitled to priority. It then became necessary to determine what items were cashier's checks and whether the payee-owner of any item or items had elected to treat his item as dishonored Proof thereof having been submitted, such determination is now before us.

In some instances the payee-owners have submitted no proof. The question, therefore, arises as to the burden of proof. Section 350-l grants preference "Except in cases where an item or items is treated as dishonored by non-payment as provided in section three hundred and fifty-j." In this proceeding the Superintendent of Banks asks instructions. Is he required to affirmatively establish that such election *was* made by the payee-owner, in order to defeat priority, or must the latter in order to obtain priority, show that the election was *not* made? One asserting a preference ordinarily has the burden of proof. Must he not only establish the facts bringing him within section 350-l, subdivision 2, but *negative* the exception therein contained; in other words, show that the item has not been treated as dishonored? The question does not seem to have directly arisen. We think it comes within the doctrine laid down in *Rowell* v. *Janvrin* (151 N. Y. 60, 66; cited, 3 Carmody's N. Y. Prac. § 928, p. 1787). The court there said: "In stating a cause of action arising upon a statute, it is an ancient rule that where an exception is incorporated in the body of the clause of a statute, he who pleads the clause ought to plead the exception. But where there is a clause for the benefit of the pleader, and afterwards follows a proviso which is against him, he may plead the clause and leave it to his adversary to show the proviso * * *. The reason upon which this rule of pleading rests seems

to be that when a party counts upon the enacting clause of a statute containing an exception, as the foundation of his action, he cannot logically state his case unless he negatives the exception. But if the modifying words are no part of the enacting clause, but are to be found in some other part of the statute, or in some subsequent statute, it is otherwise, and he may then state his case in the words of the enacting clause, and it will be *prima facie* sufficient." (See, also, *Hill* v. *Smith*, 260 U. S. 592.)

We hold that each payee-owner has the burden of showing that he did *not* elect to treat his item as dishonored, before he is entitled to priority.

Applying our holdings, the owner or owners of the following items are not entitled to preference or priority, *i. e.*, the assets of the State Bank of Binghamton are not impressed with a trust in favor of such owner or owners.

(1) All items set out in the supplemental petition under I-A, numbered 1 to 10, inclusive.

(2) The item set out in the supplemental petition under II-A. This item was indorsed and deposited by the payee, Lahm, in a bank of which he was president. Later it was charged back by said bank to a savings account of the drawer, Greek Catholic Union, in said bank. This charge has never been reversed. The drawer, Greek Catholic Union, has acquiesced by presenting a general claim including the item and by bringing action against the surety company which bonded its deposits in the Binghamton Bank. In effect, therefore, the drawer has made the check good to the payee. The latter, therefore, can have no claim, preferred or otherwise.

(3) The item set out in said supplemental petition under II-C.

(4) All items set out in said supplemental petition under II-D, numbered 1 to 12, inclusive, except item No. 11, viz., " Bell Telephone Co. of Pa.," as to which priority is allowed.

(5) All items set out in said supplemental petition under II-E, numbered 1 to 14, inclusive, except item No. 10, viz., " Barstow Stove Co.," as to which priority is allowed.

(6) All items set out in said supplemental petition under II-F, numbered 1 to 17, inclusive, except item No. 10, viz., " Scala Packing Co.," as to which priority is allowed.

There remains for consideration the two items set out under II-B, namely, a check for $10,026.39, drawn by the Greek Catholic Union (here referred to as the " Union ") to the National City Company (here referred to as " City Company ") November 17, 1930, and a check similar in amount drawn by and to the same parties, dated November 15, 1930.

Having already held that the agent collecting bank, Federal Reserve, did not elect to consider these dishonored, the sole question now is whether City Company, the payee itself, so elected.

The Union purchased securities of City Company and gave these checks in payment. The securities were not delivered. City Company indorsed and deposited the checks with National City Bank, which forwarded them to Federal Reserve for collection. When presented by mail, the Binghamton Bank remitted by its draft which was dishonored December 15, 1930.

If the checks were not treated as dishonored, they were honored, the City Company's claim against the Union for the securities sold was paid, and the City Company had its preferred claim under section 350-l, subdivision 2. If City Company elected to treat the checks as dishonored, its claim was not paid and the Union still owed it for the securities. On being advised, December sixteenth, that the remittance draft was dishonored, City Company wrote the Union that " the remittance draft * * * has been dishonored; " that the items would not be returned " although the same have not been paid," and concluded: " we have been unable to effect collection * * * and accordingly *request that you remit* funds as per the enclosed statement * * * in payment of your purchase." (Italics ours.) It inclosed a statement. Again, on January fourteenth, City Company wrote the Union that " payment has not yet been received " for the securities, and again inclosed a statement with a request " that it have your immediate attention." Again, on February fourth, City Com·pany wrote the Union and, after calling attention to previous letters, said: " Please let us hear from you * * * inasmuch as *we are obliged to look to your organization for prompt settlement of securities mentioned.*" (Italics ours.) How could the City Company have more definitely taken the position that it was treating the checks as dishonored? Again, on February eighteenth, City Company wrote the Union with reference to the securities " which to date remain unpaid."

City Company was required with reasonable diligence to elect. If it elected to consider the checks dishonored, its position in demanding payment from the Union was consistent. If it did not so elect, the Union owed it nothing and such demand was utterly inconsistent. We cannot escape the conclusion that the acts and declarations of the City Company show that it intended to treat and was treating the checks as dishonored and looking back to the maker, viz., the Union, for payment.

Later City Company refused to deliver the securities on the Union's demand. It does not clearly appear whether delivery

was conditional upon receipt of *cash or equivalent* in payment. If so, City Company may have been justified in refusing delivery even though it did not consider the checks dishonored, but it did not base its refusal on that ground.

Though promptly requested to communicate its desires, City Company never asked Federal Reserve to file a preferred claim until March 6, 1931. Then it requested the National City Bank to file a claim through Federal Reserve " on our behalf, and/or, the Greek Catholic Union   *  .*   *   as our interests may appear." While repeatedly demanding payment of the Union on the theory that it had elected to treat the checks as dishonored, City Company was endeavoring to preserve its rights to a preference on the theory that no such election had been made. It could not do both.

Throughout the correspondence, City Company was asking the Union to elect. The Union had no choice. Nothing it did or left undone would affect the City Company's rights. Even the fact that the Union filed a general claim on the checks, and later sued the surety company which guaranteed its deposits in the Binghamton Bank, would not affect the City Company's rights. Such action on the part of the Union indicates its understanding that City Company considered the checks dishonored and was looking to the Union for payment for the securities. Indeed, City Company and Federal Reserve seem to have so understood. They suggested that the Union withdraw its general claim.

We said (152 Misc. 579, 584) that in order to constitute an election, acts must point affirmatively, without other purpose, to such an election; that it was not enough that said acts were merely consistent with an election; that an act done for some other purpose did not necessarily indicate an intent to elect. Federal Reserve had charged back to the forwarding banks all these unpaid items and sent debit advices. We said that though this was consistent with an election to treat the items as dishonored, it did not necessarily establish such intent. Why? *Federal Reserve was acting as agent.* On receiving the items, it gave revocable credit. Its regulations provided that the amount should be charged back unless payment in actual funds was received. When it as agent charged the revocable credit back, ultimately to its principal, the payee, it was doing what it had a right to do even though the items were not treated as dishonored, in other words, though they were considered as paid. That was a matter between Federal Reserve as agent and its principal. There was no reason why the agent should carry the item pending collection. Their regulations provided otherwise. For the same reason, we do not

consider that the act of City Company in reimbursing National City Bank constituted an election. But here City Company was not the *agent* of the Union. Their relationship was that of vendor and vendee, creditor and debtor. If the checks were considered paid, the latter relationship was extinguished. If they were treated as dishonored, that relationship continued. City Company treated it as continuing. It rendered statements for the debt and repeatedly demanded payment. We said (152 Misc. 579, 585): " All the acts done by Federal Reserve were necessary, or at least proper, for the single purpose of keeping the forwarding banks advised and protecting itself and them against the revocable credits which had been given when the items were received." Not so here. Rendering statements to and demanding payment of the Union was neither necessary, proper nor consistent unless City Company elected to treat the items as dishonored. We hold that it did. (*Jones* v. *Board of Education*, 242 App. Div. 17.) City Company has not been reimbursed, neither had the plaintiff in the *Jones* case.

City Company says that if it had intended to treat the items as dishonored, it would have asked the return of the items, had them protested by notary public and served the usual and customary notice, making an unqualified demand on the Union for payment, and notified it that unless paid, they would sell the bonds, etc. The return of the checks was unnecessary. Protest was unnecessary. The City Company's letter to the Union of December seventeenth constituted sufficient notice. (§§ 167, 185; *Jones* v. *Board of Education*, 242 App. Div. 17, 26, 27.) City Company's letters certainly made an unqualified demand for payment.

Finally, City Company argues that whatever it did, was done in ignorance of its rights under the statute and, therefore, did not constitute an election. It says: " In other words, the attorneys for City Company advised it that the right to make an election rested *solely* with the Federal Reserve * * *. All of the acts and statements relied upon * * * to show that the City Company elected to treat the items as dishonored were made and accomplished under the belief: (1) That the City Company could not make the election to treat the items as dishonored, and (2) that the City Company could actually receive payment from the Union, in the meantime, holding any payment on the preferred claim for the benefit of the Union."

Conceding that City Company was ignorant of its right (as distinguished from the right of its agent, Federal Reserve) to make the election, we do not think it is relieved. Of the cases

cited, in *Bierce, Ltd.,* v. *Hutchins* (205 U. S. 340, 346) the plaintiff had but one right. It had no choice to make. By attempting to enforce a remedy which it did not have, it did not waive one which it did have. In *Georgi* v. *Texas Co.* (225 N. Y. 410, 412) the court held that a vendor who, knowing of an undisclosed principal, sues the agent cannot afterwards sue the principal. In *Watson* v. *Watson* (128 Mass. 152, 155); *Standard Oil Co.* v. *Hawkins* (74 Fed. 395), and *Liston* v. *Hicks* (243 App. Div. 159) each plaintiff was in utter ignorance of his right to the remedy which he did not first pursue. He was ignorant of the fact that there was a choice of remedies. Not so here. City Company does not claim to have been ignorant of its right to a preference if no election to treat the item as dishonored was made. That was written in the statute. It does not claim to have been ignorant of the fact that such an election would deprive it of the right to preference. Its claim is that it understood that such election could only be made by the agent collecting bank, Federal Reserve. Though ignorantly believing that it could not make the election, it, nevertheless, did treat the checks as dishonored, billed the Union and demanded payment. We think it is bound by its election. (*Rodermund* v. *Clark,* 46 N. Y. 354.)

It unequivocally took the position that the checks were unpaid and demanded payment of the Union. True, thereafter City Company advised Federal Reserve to include the items in a preferred claim. Even then it requested that the claim be made in favor of it and/or the Union which could have no preferred claim. After having definitely elected, could City Company rescind the election? We think not. It follows that the allowance of the claim filed by the Federal Reserve on behalf of City Company for preference must be disallowed and the general claim filed by Greek Catholic Union on the same items allowed.

An order may be submitted in accordance with this and previous holdings.